1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF NEW YORK

3    ROGER BASILE,                    .    Docket No.
                                      .    2:20-CV-00576-EK-LB
4         Plaintiff,                  .
                                      .
5             v.                      .
                                      .    Brooklyn, New York
6    COUNTY OF NASSAU, ET AL.,        .    Tuesday, April 16, 2024
                                      .    4:08 p.m.
7         Defendants.                 .
     . . . . . . . . . . . . .  .
8

9                 TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE ERIC R. KOMITEE
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiff:         Rickner, PLLC
                                ROBERT H. RICKNER, ESQ.
13                              14 Wall Street
                                Suite 1603
14                              New York, New York  10005
                                212-300-6506
15
                                Nass, Roper & Levin, P.C.
16                              JUSTIN M. ROPER, ESQ.
                                266 West 37th Street
17                              Suite 801
                                New York, New York 10018
18                              718-775-3246

19   For the Defendant, Nassau  Nassau County Attorney's Office
     County:                    RALPH J. REISSMAN, ESQ.
20                              THOMAS A. ADAMS, ESQ.
                                One West Street
21                              Mineola, New York 11501
                                516-571-3046
22
     For the Defendant, Nassau  Nassau County Police Department
23   Police Department:         CHRISTOPHER TODD
                                1490 Franklin Avenue
24                              Mineola, New York 11501
                                516-573-7210

25

1

2   Transcription Service:      Superior Reporting Services LLC
                                P.O. Box 5032
3                               Maryville, TN 37802
                                865-344-3150
4

5   Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                    P R O C E E D I N G S

2            THE COURTROOM DEPUTY:  Civil cause for status

3    conference docket number 20-cv-576, Basile versus County of

4    Nassau, et al.

5            Counsel, please state your appearances for the

6    record beginning with Plaintiff's counsel?

7            MR. RICKNER:  Rob Rickner for the plaintiff.  Good

8    afternoon, Your Honor.

9            MR. ROPER:  Good afternoon, Your Honor.  Justin

10   Roper also for the plaintiff.

11           THE COURT:  Good afternoon.

12           MR. REISSMAN:  Deputy County Attorney Rob Reissman

13   for the defendants.

14           Go ahead, Judge.

15           MR. ADAMS:  Retired Judge Thomas Adams, county

16   attorney, Nassau County.

17           THE COURT:  Good afternoon.

18           MR. TODD:  Christopher Todd for the police

19   department, Your Honor.  Good afternoon.

20           THE COURT:  For the police department meaning --

21           MR. TODD:  I'm the Deputy Bureau Chief of the Legal

22   Bureau.

23           THE COURT:  Of the Nassau County --

24           MR. TODD:  Yes, Your Honor.

25           THE COURT:  -- Police Department.  Okay.

4

1   MR. TODD:  Yeah.

2   THE COURT:  So not with the County Attorney's

3   Office?

4   MR. TODD:  Correct.

5   THE COURT:  All right.  Good to know.  Thank you

6   all for being here.  Obviously, it's not the usual course of

7   action to ask that a supervisor attend a court appearance let

8   alone the county attorney himself.  We were going down a path

9   that it seemed likely to me involves a potential violation,

10  and I would say a potential egregious violation of the rules

11  of professional responsibility by the county attorney's

12  office, and so I thought it would be -- well, and my first

13  reaction to that was to put up an order asking the county

14  attorney's office to take a position on whether that issue

15  was real or not real in light of the possibility that it may

16  have been missed.  And your office then took a position that

17  seemed obviously incorrect to me, and I just wanted to make

18  sure I understood who was in the loop here and what level of

19  thought was going into that position.

20  I know your office has since backed off that

21  position at least in part.  I was not clear until we got here

22  today what that meant in terms of who would be representing

23  the individual defendants going forward.

24  Mr. Todd, have you entered an appearance in this

25  case?

1          MR. TODD:  I have not, Your Honor.  No.

2          THE COURT:  But you're reportedly here to represent

3     the individuals or what --

4          MR. TODD:  The department not the individuals.

5          THE COURT:  The police department?

6          MR. TODD:  Yes, Your Honor.

7          THE COURT:  Okay.  Which is not a party nor even a

8     suable entity, I would assume.

9          MR. TODD:  I was advised to appear by Mr. Reissman

10    as counsel for the department.

11         THE COURT:  We'll think of you as being here as an

12    observer for the moment notwithstanding you having stated

13    your appearance.  But that's why we're here is we need to

14    sort out --

15         And Mr. Adams, you understand the ethical violation

16    I'm describing?

17         MR. ADAMS:  Well, Mr. Reissman has described the

18    rejection, so I would like -- he has spent hours on this, and

19    he's come to another conclusion.  I'd like to have him

20    express the -- what he's come up with.

21         THE COURT:  Please.

22         MR. REISSMAN:  Yes, Your Honor.  Jury issued a

23    verdict on November 2nd, 2023, which, at first glance, seemed

24    very odd and inexplicable.  And since that time -- well, let

25    me just take it one step at a time, right?  I knew something

6

1    was wrong.  I immediately made a knee-jerk reaction --

2         THE COURT:  So Mr. Adams teed this up as you being

3    about to share a new conclusion with us.

4         MR. REISSMAN:  Yeah.

5         THE COURT:  If you're going to argue that --

6         MR. REISSMAN:  Would you like me to get to that

7    conclusion?

8         THE COURT:  If you're going to argue that the jury

9    rendered an inconsistent verdict, I think I've --

10        MR. REISSMAN:  No.  I did not.

11        THE COURT:  -- had that argument.

12        MR. REISSMAN:  I never raised that issue.

13        THE COURT:  Okay.

14        MR. REISSMAN:  All right.

15        THE COURT:  Can you just tell me what is the

16   conclusion that you're about to share with me and --

17        MR. REISSMAN:  The current motion, which I filed

18   last night, the amended motion, seeks an order under Federal

19   Rule of Civil Procedure 59(e) for the Court to

20   issue -- deliberate and issue a decision on the County's

21   motion to amend or alter the jury's verdict to dismiss the

22   County as a defendant.  The County does not -- does no longer

23   move to vacate the verdict, and the County no longer moves

24   to -- for a new trial under Rule 60.  So the only issue

25   before the Court in the papers filed last night is, will the

1  Court grant the County's motion to alter or amend the verdict

2  and dismiss the County from the action?

3  　　　　　THE COURT:  I haven't read your motion since it

4  came in, I think, fairly late last night.  It didn't land on

5  my desk until this morning.  Is the basis the same, the

6  ostensibly -- the ostensible inconsistency of the verdict?

7  　　　　　MR. REISSMAN:  No, Your Honor.  My conclusion -- I

8  must admit I must have spoken in the last three months to

9  about 15 attorneys, and everybody came up with a different

10  issue, a different way to look and it.  And I must credit Mr.

11  Rickner in his April 10th letter for finally opening my eyes

12  to the conflict, and which I realize -- now realize I was

13  confused, and a lot of people I talked to were confused.  But

14  now I realize the conflict that I earlier took, and I now

15  express to the Court my apologies for my ignorance, but I

16  think I've learned a lesson.

17  　　　　　THE COURT:  Did you read the case that I cited in

18  my order?  Because I'm not sure Mr. Rickner's later

19  submission -- not to insult Mr. Rickner's legal abilities,

20  but I think I laid out pretty much the exact same argument,

21  and then you came back and said, "No, we don't see a

22  conflict."

23  　　　　　MR. REISSMAN:  Yes.  You did, but I didn't

24  understand why there was a conflict.  I must admit I did

25  not -- I didn't see why there was a conflict until Mr.

1    Rickner -- you actually -- you're accurate.  You said that

2    there was a conflict.  I didn't understand why there was a

3    conflict, but Mr. Rickner's April 10th letter put it out

4    black and white.

5            THE COURT:  Did you read the case that we cited in

6    the Court's order?

7            MR. REISSMAN:  I did, and I know you -- yeah.  You

8    said you can't -- we can't split the verdict.  You can't take

9    part of the verdict.  You have to either have both -- all

10   defendants in or no defendants in.  You can't split the

11   verdict.  But I didn't fully appreciate the problem that was

12   presented by Your Honor.

13           And so I came to the conclusion, based on Mr.

14   Rickner's explanation that Your Honor's actually right.  I

15   now understand why there was a conflict.  Therefore, I filed

16   a realized motion last night after consultation with Judge

17   Adams and the Seat Deputy County Attorney, my bureau chief,

18   and Mr. Todd, the Deputy Bureau Chief of the Legal Bureau,

19   and we all came to the same conclusion that the new motion,

20   which was filed last night, does not prejudice or conflict

21   with the interest of the two detectives who were dismissed

22   from the case, does not involve them going forward.  They

23   were dismissed from the case.  The only remaining defendant

24   is the County of Nassau, and the new motion seeks only to

25   amend or alter the verdict to dismiss the County of Nassau.

1          THE COURT:  Okay.  Have you re-read the jury

2    instructions in this case --

3          MR. REISSMAN:  Many times.

4          THE COURT:  -- since the verdict?

5          MR. REISSMAN:  Many times.

6          THE COURT:  Have you read instruction 17?

7          MR. REISSMAN:  Many times.  It's right here in my

8    brief.

9          THE COURT:  Okay.  Do you have the instruction in

10   front of you?

11         MR. REISSMAN:  Yes.  I do.  Yes.  I have it on my

12   brief at page 4, in its entirety.

13         THE COURT:  Okay.  So take a look, if you would,

14   then at instruction number 4.

15         MR. REISSMAN:  Well, I'm looking at instruction

16   17 --

17         THE COURT:  Sorry, instruction 17.

18         MR. REISSMAN:  -- on New York State Battery.  I'm

19   sorry.

20         THE COURT:  Yeah.

21         MR. REISSMAN:  I don't have the entire set of jury

22   instructions.

23         THE COURT:  Tell me if you have the part that I'm

24   about to read after I read it.  So I'm just going to read the

25   final paragraph.  If you do not find unanimously, right,

1    because the instructions required a unanimous verdict.

2         "If you do not find by a preponderance of the

3    evidence that Detective Lashinsky is liable on Mr. Basile's

4    excessive force claim or unanimously by a preponderance of

5    the evidence that Detective Perkins is liable on the

6    excessive force claim, you must consider whether Mr. Basile

7    has demonstrated by a preponderance of the evidence that at

8    least one of them used excessive force.  In that case, you

9    must be unanimous in your determination that an officer used

10   excessive force against the plaintiff, even if you are not

11   unanimous as to which officer did.  If you make such a

12   finding, you must find Nassau County alone liable for the

13   battery."  And the excessive force instruction calls out to

14   this one as well, so this applied, I think, both to the

15   federal and the state claims.  You didn't object to that jury

16   instruction, right?

17        MR. REISSMAN:  Well, I do recall a very large

18   amount of discussion about the instruction.  We had a lot of

19   back and forth.  And I think the problem, as Your Honor

20   expressed in the instruction, was that the jury -- in order

21   to find the county liable --

22        THE COURT:  Sorry.  I'm asking a very simple --

23        MR. REISSMAN:  Go ahead.

24        THE COURT:  -- yes or no question here.  Was that

25   instruction given over your objection or not?

 1                  MR. REISSMAN:  Not.

 2                  THE COURT:  Okay.

 3                  MR. REISSMAN:  Ultimately not.

 4                  THE COURT:  Correct.

 5                  MR. REISSMAN:  Correct.

 6                  THE COURT:  You did not object to that instruction?

 7                  MR. REISSMAN:  No.  I did not.

 8                  THE COURT:  That thing that I told the jury in that

 9     final paragraph they could do, i.e., if they were not

10     unanimous as to which officer committed the battery, but they

11     were unanimous that an officer committed the battery,

12     right -- let's say, of the, you know, eight people on the

13     jury, seven of them thought it was Lashinsky and one of them

14     thought it was Perkins, but they were unanimous that one of

15     the two committed battery, they would have to hold both

16     officers not liable, right, because they weren't unanimous on

17     which officer committed the battery, but they would have to

18     hold the County liable.  That's exactly what they did, right?

19                  MR. REISSMAN:  They found Detective Lashinsky did

20     not commit battery.  They found Detective Perkins did not

21     commit a battery.  But they held the County liable for $4.5

22     million under theory of respondeat superior, which is really

23     not -- in my understanding is not a correct application of

24     the law.

25                  THE COURT:  But it is a correct application of

1   these instructions?  Forget about the law for a moment.  I

2   think you're wrong about the law.  But just look at the

3   instruction and tell me whether this is exactly what they

4   did.

5       MR. REISSMAN:  Yes.  "You must be unanimous in your

6   verdict that an officer used excessive force, even if you are

7   not unanimous in your understanding of which officer did.  If

8   you make such a finding, you must find Nassau County alone

9   liable for battery."  Yes.  That is --

10      THE COURT:  Correct.  This paragraph describes the

11  precise path by which the jury would hold neither officer

12  liable for excessive force in violation of section 19(a)(3)

13  or battery under state law and nevertheless hold the county

14  liable, right there in black and white in the jury

15  instructions.  Now you're telling me that having done exactly

16  what the jury instructions expressly authorized the jury to

17  do, the jury verdict should be thrown out because it is

18  somehow internally inconsistent or because -- I mean, if

19  you're just saying the evidence was insufficient to sustain

20  the verdict, then fine.

21      But to the extent we're still -- and I'm just

22  looking at the point items in your new brief, point 2, "Cases

23  holding municipalities liable under respondeat superior even

24  in the absence of unidentified employees are inapplicable to

25  this case."  I take it -- well, I'm not sure what I take that

1    to mean, but it seems like you mean that the jury was

2    required to identify a particular employee whose conduct gave

3    rise to respondeat superior liability.  And if that's what

4    you're arguing, that would be obviously dramatically

5    inconsistent with the jury instructions to which you agreed.

6    So we're not going to argue the merits of your motion right

7    now.  I'm just going to say that I don't understand the basis

8    for it and leave it at that for now.  Maybe when I read this

9    motion in its entirety, I'll feel differently.

10          I think we have to chart the path forward in this

11   case, so to the extent -- you know, until this motion came in

12   last night, you were asking for relief that would've directly

13   harmed two of your clients.  Do you still represent the

14   individual officers, or has that representation been

15   terminated?  Let's start with that question.

16          MR. REISSMAN:  The officers are no longer

17   defendants in this case.  I don't represent.  I mean, I

18   represent them as Nassau County Attorney's Officer represents

19   all our police officers, who are indemnified, but these

20   defendants are no longer defendants in this case.  The only

21   defendant remaining in this case --

22          THE COURT:  When did they cease to be defendants in

23   this case?

24          MR. REISSMAN:  When the jury issued its verdict.

25          THE COURT:  Soon as the verdict came back?

 1                    MR. REISSMAN:  Absolutely.

 2                    THE COURT:  Okay.  I think you said --

 3                    MR. REISSMAN:  They were --

 4                    THE COURT:  -- in your post-trial motion, the one

 5      that gave rise to the obvious ethical violation, that you

 6      were representing all three defendants.

 7                    MR. REISSMAN:  Initially, that was my conception.

 8                    THE COURT:  Okay.  You need to decide -- and I

 9      think you need to speak to an ethics expert, perhaps, and you

10      need to consult the Rules of Professional Responsibility very

11      closely.  You need to decide who you represent right now.

12      And if you don't represent the individual defendants anymore,

13      then question 2 is -- well, 2A is, have you let them know

14      that that they no longer have lawyers?  And question 2B is,

15      to the extent you might be -- might be even arguably asking

16      for some relief that is inconsistent with their interests, do

17      they need to have their own lawyers appointed by the County

18      who are not you?  Okay.  So get back to me within a week,

19      please, on the answers to those questions.

20                    MR. REISSMAN:  Will those precise questions be

21      issued in an order that I can review on ECF?  Because

22      otherwise, I'll write them down right now.

23                    THE COURT:  You should be writing down everything I

24      say right now.

25                    MR. REISSMAN:  Okay.

1    THE COURT:  See this was one of the problems at

2    trial was that we paused regularly for you to ask me how you

3    should litigate the case.  That's not why I'm here.  Okay.

4    I'm not really here to field questions from the County

5    Attorney's Office.  I'm here to manage the trial.  And to the

6    extent I ask you to do things, you're here to take notice of

7    what it is I'm asking you to do and take notes on that

8    irrespective of what the docket order might say or the minute

9    entry might say at the end of the day.  That's your role not

10   mine.

11   MR. REISSMAN:  May I respectfully ask the Court to

12   repeat the --

13   MR. ADAMS:  Can we order the minutes?

14   THE COURT:  Of course you can order the minutes.

15   MR. ADAMS:  All right.  Let's get the minutes.

16   MR. REISSMAN:  Okay.

17   THE COURT:  But for the sake of clarity, like, let

18   me just repeat this now so that if I'm not being clear, you

19   can ask me any clarifying questions you want.  Do you still

20   represent the individual defendants?  If not, when did that

21   representation cease?  Do the individual defendants know if

22   the representation has ceased?  But you're not writing

23   anything down, so I'm not --

24   MR. REISSMAN:  Oh, well, we're going to get record.

25   THE COURT:  You're going to get the record?

1          MR. ADAMS:  We're going to order the record.

2          THE COURT:  All right.  Do the individual

3   defendants know that they are now unrepresented in connection

4   with this case?  And do the individual defendants in the

5   County's view need their own counsel in connection with any

6   post-trial motion practice here?  Those are the four

7   questions we need to, I think, sort out in the first

8   instance.  A second question -- or a second wave of questions

9   I have is, to the extent that your motion to amend or vacate

10  the verdict is predicated on some ostensible inconsistency in

11  the verdict, I'm not seeing it.  It may be that I just

12  haven't delved deeply enough into this and that I will see

13  the inconsistency that you see later, but as I sit here now,

14  I doubt it.  And I doubt it based on what I just read to you

15  from instruction number 17.

16          And so that raises the question, to the extent your

17  Rule 59 motion does not succeed, will there be any

18  proceedings in respect of remittitur in this case?  I don't

19  know that I've set a deadline.  Did I ever set a deadline for

20  post-trial motions such that that deadline has now passed, or

21  should I lock that down now?

22          MR. RICKNER:  In fairness, I believe the Federal

23  Rules set a deadline for post-trial motions, which has now

24  passed.

25          THE COURT:  Okay.  So we're not having remittitur

1  briefing in this case.  Is that then the upshot?

2      MR. RICKNER:  That would be Plaintiff's position.

3  Yes.  And I believe that's consistent with Rule 59, which, if

4  memory serves, has a 30-day -- I believe it's 30

5  days -- might be 21.

6      THE COURT:  So is the motion that came in last

7  night out of time?  I think I was advised that the only thing

8  that was going to change in connection with this motion was

9  that it was going to be made on different party -- on behalf

10  of different parties but that we now have a motion that is

11  predicated on a different legal theory.  Is that -- well, you

12  tell me.  What motions are live in the plaintiff's view, and

13  what are late filed?

14      MR. RICKNER:  So I guess I expected to see a motion

15  that was essentially on behalf of Nassau only and then went

16  through and crossed out the words new trial in every part of

17  the brief, which essentially would leave the same motion

18  except only leaving the relief that they're currently seeking

19  because I did understand their initial motion as seeking to

20  essentially secure a full dismissal or in the alternative, a

21  new trial.  The motion papers that I have I would say are

22  somewhat of a mélange of the reply brief and the initial

23  moving brief.  I reviewed it.  I did a comparison.

24      We have 84 replacements, 16 insertions, and 63

25  deletions.  And if you look at it on Adobe in the comparison,

1   it's a bit dizzying, but clearly, some of the paragraphs are

2   almost entirely new.  Some of them aren't changed at all.

3   Some of them are what I would call somewhat improved versions

4   of prior things.

5          But sifting through all of that, I think we still

6   have roughly the same motion that we had before just removing

7   two of the parties in the new trial.  And I would say since

8   it's an amendment of the prior motion that was made, I don't

9   see how that would be time limited.  I read Your Honor's

10  order saying put this up on the docket as in effect granting

11  the letter motion to amend, which they now have.  Plaintiff

12  has no objection to this amendment since it's less than

13  before.

14         THE COURT:  I expected deletions but not additions,

15  essentially.  It sounds like we got some of each, but you may

16  well be right that this is at least the same legal theory

17  that's being pursued pursuant to the same Rules of Civil

18  Procedure and therefore, it should be deemed, I guess, to

19  relate back in its entirety to the earlier filing.

20         So the plaintiff's position you just heard is that

21  the motion that came in last night, no part of it are they

22  arguing now should be stricken or barred based on a time

23  limit.  I would've expected -- and again, I'm just giving you

24  my preliminary reaction here.  It's not for me to tell you

25  what your legal strategy should be.  But my preliminary read

1    of the inconsistency argument is that for precisely the

2    reasons laid out in instruction 17, this is not an

3    inconsistent verdict.

4         I would have expected some litigation in respective

5    remittitur because $4.5 million is a big number at least to

6    me.  I don't know exactly what the budget of the County of

7    Nassau is, but $4.5 million can pay for a lot of services for

8    county residents.  And you know, without prejudging anything,

9    obviously, I was at least half expecting that a motion for

10   remittitur would've been forthcoming.  The plaintiff you just

11   heard articulate the view that any such motion filed now

12   would be untimely, and that may well be correct.  Just so I

13   understand where this case is going, is it correct that you

14   have no intention of pursuing remittitur?

15        MR. REISSMAN:  May we have a moment, Your Honor?

16        THE COURT:  Please.

17      (Counsel confer)

18        MR. REISSMAN:  Judge Adams is wondering if the

19   parties could conference separately with Your Honor at this

20   time, which we did have a settlement conference with

21   Magistrate Bloom couple weeks ago, and she did take each side

22   in turn.  We were authorized at that time to offer 99,000 --

23        MR. RICKNER:  Objection.

24        THE COURT:  Yeah.  There's a reason that settlement

25   conferences happen with the Magistrate Judge instead of me,

1    and I'd like to continue that separation in effect.  I don't

2    know what happened in front of Judge Bloom in respective

3    settlement negotiations for which I was not present.  I see a

4    lot of activity on the docket, which suggests to me that

5    Chief Judge Bloom tried her level best to broker a

6    post-verdict disposition here.  If I had to guess, I would

7    say that the fact that there was not even a motion pending

8    for remittitur -- you understand what I mean when I say a

9    motion for remittitur?

10              MR. REISSMAN:  Yes, Your Honor.

11              THE COURT:  Okay.  So the fact that there was not

12   even such a motion pending, I would guess, would inhibit the

13   willingness on the part of the plaintiff to settle for

14   anything less than the full amount of the verdict.  But I

15   wasn't there, so I don't know, and obviously, I can't read

16   anyone else's mind.  That's why I asked, did you ever -- did

17   you still have any intention to file such a motion, and do

18   you believe that that motion should be entertained despite

19   the timeliness issue that you just heard articulated by the

20   plaintiffs here?

21        (Counsel confer)

22              THE CLERK:  Could I get you on the microphone?

23              MR. ADAMS:  Oh, I'm sorry.  Having been a judge for

24   35 years in the 2nd Department, you know, I've conferenced

25   with Judge Azrack out in Suffolk with numbers.  You can't

1   entertain a settlement conference or a --

2            THE COURT:  There's no reason why I couldn't.

3            MR. ADAMS:  It's up to you.

4            THE COURT:  Yeah.  So I understand the objection

5   here.  Judges are more hesitant to get involved in settlement

6   negotiations in bench trials, for obvious reasons where they

7   function as the finder of fact, than judges are in the jury

8   trial context in which we find ourselves here.  I don't think

9   it's -- there's an absolute prohibition on me discussing

10  settlement negotiations.

11           But, two things, A, as a prerequisite to that, I

12  would have to know that both parties wanted to engage in

13  settlement negotiations with me, and I don't know yet that

14  the plaintiffs want to do that, and two, I don't see the

15  point in dedicating a lot of time to that when the verdict is

16  all but a certainty at this stage.  If there was a pending

17  motion for remittitur and therefore, there was a real risk

18  for the plaintiffs that the $4.5 million verdict was going to

19  be cut down meaningfully, then I would think that would

20  create a substantial incentive on the part of the plaintiffs

21  to come to the settlement negotiation table.  As of now,

22  there is no such motion pending, and it may be that that

23  motion is out of time.  And if that's the case, then why

24  would the plaintiffs agree to anything, right?  So let's not

25  waste all of our time, is the upshot, I think.

1          (Counsel confer)

2          MR. REISSMAN:  May I suggest that if plaintiff

3     agrees to -- and the Court allows the defendants to make a

4     remittitur motion at this point, defendants will make such

5     motion if Plaintiff accepts -- agrees to and if Judge accepts

6     the ability for defendants to make a remittitur motion.

7          MR. RICKNER:  This may come as an enormous

8     surprise, Your Honor, but Plaintiff does not agree.

9          THE COURT:  Right.  So there's no reason why the

10    plaintiffs would consent to that, at least that I can think

11    of.  It may be that there is some cause and prejudice-type

12    analysis that you could argue that would allow you to file

13    such a motion out of time.  I doubt it, but I don't know one

14    way or the other.  That's why we're here today is to try to

15    tee-up the path forward, and that's why I'm asking you, let

16    me know, also within a week, what your position is with

17    respect to a motion for remittitur, whether you intend to

18    file one and whether you believe it should be considered

19    notwithstanding the untimeliness argument that the plaintiff

20    has made and site case law from the Second Circuit or U.S.

21    Supreme Court in support of your position, and you know, I'll

22    let you know whether we would entertain such a motion or not.

23          I don't know that there's interplay necessarily

24    between the representation issues and the remittitur motion

25    issue.  I don't think there is, but you'll think about

1    whether you need to take account of one in connection with

2    establishing your position on the other.

3                MR. REISSMAN:  Judge, as far as timing goes, today

4    is Tuesday.  Next week, I will be out Monday -- next week, I

5    will be out Monday, Tuesday, and Wednesday for Passover and

6    the following Monday and Tuesday for Passover, and I have to

7    get the transcript first.  I, therefore, respectively request

8    that defendant's respond to Your Honor's directions no later

9    than Friday, May 10th.  That's realistic.

10                THE COURT:  Friday, May 10th.  Let me just look at

11   a calendar.  So you're traveling?

12                MR. REISSMAN:  No.  In observance of Passover,

13   Orthodox Judaism requires that we do not work on --

14                THE COURT:  For the full eight days.

15                MR. REISSMAN:  No, first two days and last two

16   days.

17                THE COURT:  Okay.

18                MR. REISSMAN:  The middle days you can work, but --

19                THE COURT:  Got it.

20                MR. REISSMAN:  -- it's going to be very tight.  I

21   do have two conferences the Thursday and Friday after the

22   first two days.

23                THE COURT:  Yeah.  May 10th is fine.

24                MR. REISSMAN:  Thank you, Your Honor.

25                THE COURT:  And then the plaintiffs can respond or

1  not respond on the representation point.  I think we've teed

2  that up pretty well.  I imagine you do want to be heard on

3  the question of whether an untimely motion for remittitur

4  should be entertained, and you should do that by May 24th.

5         MR. RICKNER:  I was going to say the 17th would've

6  been fine.

7         THE COURT:  All right.  Then the 17th.

8         MR. RICKNER:  And as to whether or not in response

9  to the representation issue will just depend on whether or

10  not I agree with what Mr. Reissman ultimately puts in.  I

11  would like, perhaps, something like the 24th or at least

12  after this next round of briefing to put in a response to the

13  current motion or a letter that says I stand on my current

14  briefs.  I don't want to be in a position where ultimately

15  I'm in front of the Circuit, I've got a renewed motion, I

16  haven't put in an objection to some sort of thing, and I end

17  up getting jammed up later, so I really need to spend some

18  time with the brief and see if I have to retool my prior

19  filing to --

20         THE COURT:  Yeah.  I was going to ask for your

21  response to any defense motions to be filed all at once and

22  so therefore to know whether we're dealing with just this

23  Rule 59 motion or whether there's a remittitur motion pending

24  specifically as well, and then, you know, you'll get 25 pages

25  on the whole thing or more if you need them and ask for them.

1          MR. RICKNER:  Understood, Your Honor.  At which

2     point, then we'll just wait for timing on briefing with

3     respect to the current filed motion until after you decide

4     based on whatever is done briefing on the 17th.

5          THE COURT:  Right.  Yeah.  If there's going to be

6     no remittitur motion, then we'll just move to schedule your

7     response and an ultimate reply, if necessary.

8          MR. RICKNER:  Excellent.  Because I think --

9          THE COURT:  Otherwise, we'll do the whole thing at

10    once.

11         MR. RICKNER:  I think under the Default Rule, I

12    would only have 14 days but --

13         THE COURT:  Yeah.  If that's the deadline, that

14    deadline is stayed until we figure out what other

15    post-verdict motion or motions, if any, will be forthcoming

16    from the defense.

17         MR. RICKNER:  Thank you, Your Honor.

18         THE COURT:  Anything else from the plaintiff's side

19    before we adjourn today?

20         MR. RICKNER:  No, Your Honor.

21         THE COURT:  All right.

22         MR. REISSMAN:  I'd like to clarify ordering the

23    record.

24         MR. ADAMS:  We have to order the record.

25         THE COURT:  You don't need me for that.

1          MR. REISSMAN:  I'll talk to the clerk.

2          THE COURT:  I think you have a conversation --

3          MR. REISSMAN:  I'll talk to the clerk.  Yes.

4          THE COURT:  Anything else substantively from the

5    defense side or procedurally?

6          MR. REISSMAN:  Nothing, Your Honor.

7          THE COURT:  All right.  My thanks again to the

8    county attorney himself.  As a child of Nassau County, I --

9          MR. ADAMS:  Freeport, I understand.

10         THE COURT:  Born in Freeport but mostly raised in

11   Port Washington.

12         Thank you, all.  We'll be in touch.

13       (Proceedings adjourned at 4:44 p.m.)

14

15

16                TRANSCRIBER'S CERTIFICATE

17         I certify that the foregoing is a correct

18   transcript from the electronic sound recording of the

19   proceedings in the above-entitled matter.

20

21                              April 17, 2024

22   *Natalie C. Webb*

23   _____     _____

24   Natalie C. Webb                          DATE

25   Legal Transcriber


Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com